Oct. 1797.

Beane
vs.
Middleton.

Suppose the several counts apply to different promises, and different sums, as they frequently do; and entire damages are given, how can you sever the damages so as to reject only those awarded on the bad count?

Again: In this case the 1st *count* is for money had and received, and the 2d *count* for certificates. That both counts are intended to apply to the certificates is evident. The same sum in each count, and the special count is that to which we look for the nature of the case. The 2d *count* is defective, and the plaintiff ought not to recover upon it; and the 1st *count* does not suit his case, and therefore ought not to recover on that; for he cannot recover certificates on a count for money had and received—*Esp.* 99. So that if he recovers in this case, it is upon a declaration in which one count is wholly vitious, and the other, though good in its form, is wholly inapplicable to his claim. Suppose it had been tried on *non assumpsit*; he could not have given evidence on the 1st *count*, and of course must have taken his verdict on the 2d *count*, which is defective, and shews no title. Would not his judgment have been arrested or reversed?

In short, the rule is not absurd; and if it is, as I find it to be law, so I argue upon it. I know not where to look for the law but in the books, and when I find it there, take it for granted it is so. I do not presume to judge of its propriety; I only ask if it be law.

The case was continued until this term, (October 1797) when

THE GENERAL COURT *reversed* the judgment of the County Court.

The Reporters have been informed by Mr. *Shaaff*, (who was employed as counsel for the plaintiff in error, on Mr. *Pinkney's* absence from the United States) that the general court reversed the judgment of the court below on the ground of a *miscontinuance* having taken place in the proceedings in that court.

## GENERAL COURT, OCTOBER TERM, 1797.

### BELT's Lessee *vs.* BELT.

EJECTMENT brought to recover several tracts of land lying in Prince-George's county, viz. *Addition to Good Luck, Recovery, The Jeremiah and Mary,* and *Belt's Pig Pen.*

The following case was stated for the court's opinion, viz. It is admitted by the parties that *Jeremiah Belt*, the testator, was seised in fee of the tracts of land

Oct. 1797.

Belt's Lessee
vs.
Belt.

for which this suit is brought, at the time of making and executing his last will and testament, bearing date on the 15th of October 1750, and that he died seised and possessed thereof, as the law requires; which will is as follows. to wit: "In the name of God, amen. I, Jeremiah Belt, of Prince-George's county, gentleman, being in perfect health, and of sound and perfect mind and memory, *and being desirous to settle my worldly affairs,* do make this my last will and testament, in manner and form following. viz.

"*Imprimis.* I recommend my soul to the Creator, hoping through the merits of my Redeemer that it will be found acceptable in his sight; my body I desire may be decently buried, and at the discretion of my loving wife, *Mary Belt,* and my kinsman *Jere. Belt,* and that the charge and expense thereof be defrayed out of my whole personal estate, which after my debts paid, and the above charge be deducted, I dispose of as follows:

"*Item.* I give and bequeath to *Edward Talbot* all that tract of land lying on the draft of Bennett's creek, called *Belt's Tommohauk,* containing one hundred and fifty acres, and lying in Frederick county; but if the said *Talbot* should die before this will be in force, then to his eldest son then living.

"*Item.* I give and bequeath all the rest of my estate, real and personal, to my loving wife *Mary Belt,* during her natural life, and then as follows:

"*Item.* I give and bequeath to *Jeremiah Belt,* son of Col. *Joseph Belt,* all my lands, which are as followeth: *Addition to Good Luck,* 150 acres; *Recovery,* 400 acres; *Jeremiah and Mary,* 100; *Belt's Pig Pen,* 200 acres; as also the right of mortgage on *John Brashear's* land. called *Bresher's Neck,* as far as my right doth reach; and also all my right of mortgage to *Francis Dorset's* land, being part of *Orphan's Gift,* to quietly possess these *lands after the death of my wife, and not before; and if the said Jeremiah Belt should die before he comes to enjoy the lands before mentioned, then they shall be the right of his eldest son Richard Belt; and if he die before he comes to the age of 21 years, then the lands before mentioned to be the right of his second son, Edward Belt; and if he should die before he comes to the age of 21 years, then all the right of all the lands before mentioned to be the eldest son of Joseph Belt, son of Col. Joseph Belt. to them and their heirs and assigns forever.*

"*Item.* I give and bequeath to *Fielder Gantt* one negro girl named *Sarah,* but not her increase that she may have before the death of my wife, but all after; and also one negro boy named *Roger,* but not to have either of them till after the death of my wife *Mary Belt.*

"*Item.* I give and bequeath to *Jeremiah Belt,* before mentioned, and *Tobias Belt* and *Joseph Sprigg Belt,* after my debts are paid, all the remainder of my personal estate, to be equally divided between them; and if either die, then between the other two; and if two die, then to the other one; and if all three should die, then to *Richard Belt,* (eldest son of the aforesaid *Jere. Belt*) and *Thomas Belt,* brother of *Joseph Sprigg Belt.*

"*Lastly.* I do appoint my loving wife *Mary Belt,* and the above named *Jeremiah Belt,* to administer, and be equally whole and sole executors of this my last will and testament; and I do hereby revoke, make void all other wills by me made. In witness whereof I have, to this instrument of writing contained in half a sheet of paper, set my hand and seal this 15th day of October, 1750.

JERE. BELT."          (L. s.)

[The will was "signed, sealed, published and declared, by the said *Jere. Belt,* to be his last will and testament, in presence of" three witnesses, two of whom proved the said will on the 23d of November, 1768.]

It is further admitted, that *Jeremiah Belt,* youngest son of Col. *Joseph Belt,* the devisee in the said will named, did survive *Mary Belt,* the wife of the testator; and that on her death he became possessed of the said lands according to the said devise, claiming to hold the same as in fee, and continued, and always remained in possession thereof as aforesaid, till the time of his death, which happened some time in the year 1787. That the defendants claim under *Jeremiah Belt,* the devisee; and that the said *Jeremiah Belt,* the devisee, and those claiming under him, have been in possession of the said lands as aforesaid from the year 1770; and that during that period, there was no legal disability arising from the exceptions contained in the act of limitations on the part of the lessor of the plaintiff, or those under whom he claims, from instituting suits for the recovery of the said lands, if they had been so inclined.

It is also admitted, that the lessor of the plaintiff is heir at law to the testator *Jeremiah Belt,* being the son of *John,* who was the eldest son of Col. *Joseph Belt.*

The sole question submitted to the court on the whole case stated is, whether on the points of law arising thereon judgment shall be entered for the plaintiff or defendants.

*Ridgely,* for plaintiff, (*J. Belt's* Lessee.)

*Sprigg,* for defendants, (*F. & T. Belt.*)

THE GENERAL COURT, (*Chase,* J. alone) gave judgment on the case stated for the plaintiff for possession and costs.

The defendants brought a writ of error, and the case was removed to the court of appeals, and came on and was argued in that court at November term 1799.

*Key* and *Sprigg*, for the plaintiffs in error. *(a)*

*Ridgely*, for the defendant in error. The question now before the court for their decision, arises on a writ of error, brought for the purpose of reversing a judgment rendered in the general court, on a case stated and agreed to by the parties. If therefore this court, which is the ultimate resort for the decision of all questions of law arising in our courts of justice, should, upon a full consideration of the case, be of opinion that the judgment of the general court given in the present case is erroneous and contrary to law, then the plaintiffs in error must succeed, and that judgment be reversed and set aside; but if, on the contrary, your honours should accord with the general court in opinion, then the defendant in error will have that judgment affirmed which, on a full and fair investigation of the subject, he obtained in the court below.

The contending parties in this case are, on the one part, the heir at law, claiming the inheritance of his ancestor, *as his birth right*, on the other part, à devisee, claiming under the last will of that ancestor, in *exclusion of the heir at law*, and to his total disinheritance.

The decision of this point will depend on the intention of the testator, manifested in his last will and testament, and that *intention* is to be collected from the words of the will itself.

The facts, as stated upon the record and proceedings, are briefly as follow: *Jeremiah Belt*, the testator, made his will in the year 1750, wherein he made a disposition of the lands in dispute, of which he was seised in fee, to his nephew *Jeremiah Belt*, in the words of the will.

The plaintiffs in error contend, that by the words of the will, *Jeremiah Belt*, the devisee, took an *estate in fee*.

The defendant in error contends, that he took only an *estate for life* under the will, and the reversion not being disposed of, on the contingency of *his living quietly to possess these lands*, which event took place, and not being disposed of by the will, the lands descended, after his death, to the *heir at law* of the testator.

To determine correctly upon this case, we must advert to general maxims, which have been adopted by the unanimous consent of our courts respecting the construction of last wills and testaments; for it is by applying general rules to particular cases that we attain, with the greatest certainty, the truth, and escape those er-

*(a)* Their arguments have not been procured.

rors into which we might be otherwise led, either by the ingenuity of counsel, or by an indiscriminate application of cases not applicable to the one under deliberation. Some of these maxims I will recapitulate, and apply them to the case now before the court.

It is undeniably established by the decisions of our courts, as a rule, that an heir at law shall not be disinherited but by the plain intention of the devisor.—2 T. R. 225, *Vessey vs. Wilkinson.* Words tending to *disinherit the heir at law will not prevent his taking unless the estate is given to some other person.*—*Dougl.* 734. *"It is a clear rule, that there must be express words, or a necessary implication, to disinherit the heir at law."*—Per Lord chief justice *De Grey,* in *Frogmorton,* on the demise of *Wright* vs. *Wright & Kershaw.* 3 *Wils.* 418. *Vaugh.* 262. In 3 *Burr.* 1634, per Lord *Mansfield,* "A court of justice may construe a will; and, from what is expressed, necessarily *imply* an intent not particularly specified in words; but we cannot, from arbitrary conjecture, though founded upon the highest degree of probability, *add* to a will, or *supply* the omissions;" and he then cites the case of *Bellasis* vs. *Urthwaite,* and others, 11 Feb. 1737–8, in which Lord *Hardwicke,* though generally liberal in construing the intent of testators, would *not* supply a *contingency omitted* in the most favourable case that could exist.

In this case then, if the court cannot find words in the will sufficient in law to give the devisee a fee in the lands in dispute, they must say he took an estate for life only, although they should themselves believe that the intention of the devisor was otherwise.

Our claiming as heir at law should not prejudice our case, for as *Ashurst,* justice, observes in his argument in the case in 2 *T. R.* 225, "This is a chance given to the heir at law. He has a right to take advantage of the slips and omissions in a will, and we cannot take it from him."

In animadverting upon the words of this will, I shall apply these maxims or rules to the present case, and in so doing I hope to remove all doubt as to the legality of the judgment rendered by the court below.

It must be conceded, that if the testator had made no disposition of these lands in his will, the estate in them would have vested in the defendant in error, as his heir at law; and it is equally clear, that this Will can operate no further, *to the exclusion of the heir at law, than the words in it import*; the intention of the testator being to be collected from *them only,* and not from *suppositions* and *conjectures,* however plausible they may be. It is only in the power of this court *to expound the will* of the

testator; it cannot make one for him. On a fair expo‐
sition of the contents of the one now under considerati‐
on, it will be found that the testator devised a life estate
only in the lands in dispute, to his nephew *Jeremiah
Belt,* under whom the plaintiffs in error claim. The
law, in a conveyance of real estates, requires words of
limitation in the donation or grant, for the creation of a
fee. At common law, no man can create a fee by con‐
veyance without the word " *heirs.*"

When wills were introduced, they were considered as
a species of conveyance to be governed by the same
rules; and if there be no words of limitation added, nor
words of perpetuity annexed, a devisee can only take an
estate for life—*Cowp.* 306. In deeds, words of limitati‐
on are indispensably necessary to pass an estate of inhe‐
ritance; and no circumlocution is admissible, or suffici‐
ent in them, to transfer an estate in fee, without the word
" *heirs.*" In wills the rule is not so rigid, and a great‐
er latitude is allowed, because the party is supposed to
be *inops concilii;* as for example, the words " I give
Blackacre to A. forever," will pass a fee, the word " *for‐
ever*" being a word of *perpetuity;* but still there is no
case to be found where *the words of a devise, importing
an estate for life, have been construed to give a fee.*

This will, even, in its preamble, does not indicate an
intention in the testator to dispose of all *his worldly es‐
tate,* which is usually premised when that is the case.
From the expressions he has used, it is to be inferred that
he meant, *at all events,* to dispose of the whole of his
personal estate; an intention carried into effect in the
latter clauses of his will. But there is no intention de‐
clared or evinced by him to dispose of *his whole real es‐
tate at all events whatever.* And this court will not pre‐
sume *that* which does not appear, for the purpose of *ex‐
cluding the heir at law,* in whose *favour,* on the contra‐
ry, every presumption ought and is to be made. In the
second clause in this will the testator gives to *Edward
Talbot* a tract of land called *Belt's Tomohawk;* but if he
should die before him, then he gives to *Talbot's* eldest
son, living at the time of his (the testator's) death. The
counsel for the plaintiffs in error must admit that this is
but a devise for life. That clause, and the one in favour
of *Jeremiah Belt,* are not couched in the same terms,
*verbatim et literatim;* but, upon fair construction, they
contain only the same extent of donation, and the same
meaning, viz. that *Jeremiah Belt* should enjoy the lands
devised to him for life, in the same manner as *Talbot*
should; for there is *no condition* or *limitation* coupled with
the event of *his living to enjoy them.*

In the next clause he gives to his wife all the rest of

OCT. 1797.

Belt's Lessee
vs
Belt.

his estate, real and personal, during her natural life; and then he uses these words: "I give and bequeath to Jere-miah Belt, &c. &c. to quietly possess these lands after the death of my wife, and not before; and if the said Jeremiah Belt should die before he comes to enjoy the lands before mentioned, then they shall be the right of his eldest son," &c.

What is the meaning of this clause? It is that Jere-miah should enjoy these lands after the death of the tes-tator's widow. Suppose the clause had stopped at the end of these words, surely there was but an estate for life devised to him, there being no words implying an in-tention in the testator to give him a greater estate.

All that it is incumbent on us now to shew, in support of our case is, *that the contingency on which the lands were limited over, and the heir at law to be disinherited, never did happen.* Jeremiah Belt, the devisee, did not die be-fore the widow, but according to the words of the will, he lived and quietly possessed these lands after her death, as is admitted in the case stated; then the contingency did not happen, and the limitations over fail. That our construction is correct, is apparent from the will itself. The testator does not, after the devise to Jeremiah, pro-ceed on and say, that from and after his death the lands shall go to his heirs, neither does his will contain any words which express, or from which can be implied, that such was his intention. It contains no disposition of this estate after the death of Jeremiah, provided he lived to enjoy it. If it had been the testator's intention that the heirs of Jeremiah should inherit, after his living to possess the lands according to the tenor of the will, he would surely have expressed himself so as to have given effect to his intention. He has at all events *omitted* to do so; *an omission* which this court cannot supply, even were the supposition founded on the highest degree of proba-bility; for if it should undertake to do so, it would *add* a clause to the will which at present it does not contain.

But it has been contended that the words "*to them and their heirs and assigns for ever,*" at the conclusion of this clause in the will, relate to *Jeremiah Belt,* as well as to the *other persons* who were to take, upon the event of his dying before he came to possess the estate.

It is a general rule and maxim, which has been laid down by courts of justice, as well in the case of wills as of all other common assurances, by which title to lands and tenements may be transferred and conveyed from one man to another, "that the construction be "made upon the entire deed, and not merely upon dis-"jointed parts of it; and therefore, that every part of it "be (if possible) made to take effect; and no r    �470

Oct. 1797.

Belt's Lessee
vs.
Belt.

"what may operate in some shape or other." 2 *Bl. Com.* 380. 1 *Bl. Rep.* 377. 1 *P. Wms.* 457, *Butler vs. Duncomb.*

Let us see if these words cannot be properly gratified without applying them to *Jeremiah Belt,* the devisee. They certainly can; and it may be further asserted, that in applying them to him, a strained construction is given to them which violates every rule of grammar.

For argument sake we will make them apply to that part of this clause in the will which give *Jeremiah Belt* the lands, and admit, that by force of those words he acquired a fee after the death of the testator's widow. Then this absurd consequence follows; that the following, or subsequent parts of the clause, *devising to his eldest son Richard,* to his second, &c. &c. are nugatory and unnecessary. For if *Jeremiah* had the fee, there was no necessity of devising to his eldest son an estate which he would have inherited as heir to his father. Suppose that *Jeremiah* had died intestate after the devise in his favour took effect, and that his eldest son *Richard* also had died before he was twenty-one years of age, leaving issue; who would have taken this estate if the construction contended for is adjudged to be legal and correct? Not the second son of *Jeremiah,* but the issue of *Richard,* his eldest son. The counsel for the plaintiffs in error must admit that this would be the inevitable consequence of the doctrine they contend for. Give *Jeremiah* a fee, on the event of his living to possess the lands after the widow's death, and all the subsequent limitations in the will, upon his surviving her, are at an end. Then the issue of his eldest son would, in the case I have put, be preferred, upon the same principle we now urge in favour of the heir at law of the testator. Let us now advert to the will and ask, was this the intention of the testator, that these lands, upon the death of *Richard,* before he was twenty-one years of age, should not go over to his brother? Does he not expressly direct that they should? How is this to be reconciled with the doctrine contended for on the other side, that *Jeremiah Belt,* and his heirs, had an unlimited fee after the widow's death, and might dispose of it as he pleased. But when we look at this will, we find a very material difference in the language used by the devisor, when giving to *Jeremiah,* and when to the others:— "I give and bequeath to *Jeremiah,* &c. to quietly possess, &c. But if he die before, &c. *then* they shall be "the right of his first son, &c. *And if he die* before he "comes to the age of twenty-one years, *then* the lands "before mentioned, to be the right of the second son, "&c. *And if he should die* before he comes to the age of

"twenty-one years, *then all the right, of all the lands be-* "fore mentioned, to be the eldest son of Col. *Joseph Bell,* "to them, and their heirs and assigns, forever."

It is extremely questionable whether these words, "all the right," would convey a fee, as well as *"all my estate."* When limiting to his last devisee, he uses the expression, *"all the right* of *all the lands* before mention- "ed to be the eldest son of Col. *Joseph Belt, to them,* and *"their heirs and assigns, forever."* I contend that, as it is evident it was the testator's intention to give a fee to the eldest son of Col. *Joseph Belt,* the words "to them, and their heirs and assigns, forever," can only with propriety be applied *to his issue, and their heirs.* The legal, as well as the common grammatical rule of con- struction is this—*"ad proximum antecedens fiat relatio;"* in construction, *"words shall relate to the first antece- dent."* Yet admit for a moment that these words are not to be confined to the last part of this clause in the will, how far back shall they relate? Only this far back, giving them their greatest latitude of *"intendment."* viz. If *Richard Belt lived to arrive at the age of twenty-one years,* he should *then have a fee.* Then in no possible case and by no rule, can they be made to apply to *Je- remiah Belt,* for whether he lived to be twenty-one or not, it made no difference. Again, if they are applica- ble to *Jeremiah* why not extend them to *Edward Talbot?*

The following authority is a case in point, and the court I hope will be of the same opinion with judge *Wilmot,* who in 2 *Wils.* 324, *Dodson vs. Green an: oth- ers,* justly observes—"cases in the books, upon wills, "have no great weight with me unless they are exactly "in the very point." The book I allude to, is *Com. Rep.* 358. "I give to my wife *Jane,* all my *freehold* lands in "A. and I give to my son *George,* my *freehold* lands in "B. *after my wife's decease;* and if it shall happen that "my son *George* should die before he attains twenty-one "years of age, then the lands shall go over." The court said—*"here is no devise to the heir of George, and "no one shall take without an express devise to him."*

This case is similar to my client's. It is, as lord chief justice *Wilmot* says, *"exactly in the very point."* In the first part of my argument I laid down some ge- neral rules, as I promised I would—these, when applied to the case before the court, shew the correctness and legality of the judgment below, in such strong colours, that they remove all difficulty as to the confirmation of it. The case cited from 2 *T. R.* 225, *Vessey vs. Wilkin- son* and others, is shortly this—Whether, by the event of *John Wall's* surviving the testatrix, the whole subse- quent part of the will, as to the remainder in fee, be-

came void? The court were of opinion *that it did.* So
in this, our case, the true question is, whether, by the
event of *Jeremiah Belt's surviving* the wife of the testa-
tor, the remaining parts of this clause in the will, as to
the remainders in fee, have not become void?

The argument of Mr. Justice *Ashhurst,* in this case, in
which he and Mr. Justice *Grose,* differed in opinion with
Mr. Justice *Buller,* is at once elaborate and convincing;
and I will call the attention of the court particularly to
it. I will now only refer to some other authorities, and
conclude my argument. In 12 *Mod.* 597, this is the
doctrine recognized by the court. Where words in a
will may be satisfied without carrying an estate from
the heir at law, they shall never be construed *to dis-
inherit him at all, by any implications, but such as are
necessary, and without which the words would be re-
jected as void, and of no signification or sense.*

Surely in this case the will of the testator can be gra-
tified without applying the words "to them, and their
heirs and assigns forever," to *Jeremiah Belt.*

Again, in the case cited by Lord *Mansfield,* in his ar-
gument in the case of *Chapman vs. Brown et al.* and
decided by Lord Chancellor *Hardwicke,* where "a mother
"devised her real and personal estate to her daughter,
"(an only child) *and if she died before she was of age to
"dispose thereof, then devised it over.* The daughter
"lived to be married, and died leaving a daughter, be-
"tween 20 and 21. Lord *Hardwicke* decreed for the
devisee over, as to the real estate." 3 *Burr.* 1634.

The Court of Appeals at Nov. term, 1799, *affirm-
ed* the judgment of the general court. *Mackall,* J. *dis-
sentiente.*

## GENERAL COURT, OCTOBER TERM, 1797.

### Wolgamot *vs.* Bruner.

Appeal from Washington county court. This is the
same case reported *ante,* page 70. It was an action of
*replevin,* brought by the present appellant, wherein the
defendant, the present appellee, avowed a distress for
35*l.* current money, being for half a year's rent in ar-
rear, ending on the 1st of July, 1794, under and in vir-
tue of an indenture of demise between them made, &c.
The plaintiff pleaded thereto three pleas—1st. *Nothing
in arrear.* 2d. *Payment;* and 3d. *Discount,* or *set off,* as
to part, and *payment* as to the residue, viz. "as to 25*l.*
11*s.* 9*d.* current money, part of the said 35*l.* rent in the